UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MELANIE ROBERTS, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 21 C 865 ) ) Judge Sara L. Ellis |
| DENIS McDONOUGH, Secretary, United States Department of Veterans Affairs, | ) ) ) |
| Defendant. | ) ) |

**OPINION AND ORDER**

After Plaintiff Melanie Roberts medically retired from her position as a contract specialist with the United States Department of Veterans Affairs (the "VA"), she filed this lawsuit against Defendant Denis McDonough, as Secretary of the VA, alleging failure to accommodate her disability and discrimination in violation of the Rehabilitation Act of 1973, 29 U.S.C. § 791 *et seq.*; interference with her rights under the Rehabilitation Act; race discrimination in violation of Title VII, 42 U.S.C. § 2000e *et seq.*; age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623 *et seq.*; and retaliation in violation of Title VII, the ADEA, and the Rehabilitation Act. The VA moves for summary judgment on all of Roberts' claims but only addresses her failure to accommodate, race discrimination, and age discrimination claims. In response to the VA's motion for summary judgment, Roberts has agreed to withdraw her race and age discrimination claims. Doc. 49 at 1. But Roberts' disability discrimination, interference, and retaliation claims remain. Moreover, because Roberts has established a genuine issue of material fact regarding her status as a qualified individual and the reasonableness of the VA's failure to provide all of Roberts' requested accommodations, the Court denies the VA's motion for summary judgment on Roberts' failure to accommodate claim.

# BACKGROUND[1]

Roberts enlisted in the United States Air Force in 1994. In 1995, after experiencing numbness in her feet and hands, doctors diagnosed Roberts with multiple sclerosis ("MS"), a disease that affects the central nervous system. Roberts' MS causes symptoms including vertigo, muscle spasms, chronic headaches, pain, fatigue, and numbness. The medication Roberts uses to treat her MS symptoms creates side effects including nausea, drowsiness, headaches, vertigo, and stomach pain, all of which can linger for between two and four hours.

Roberts left the military in 1999 after experiencing three to four MS episodes per year. Upon her military retirement, Roberts worked in various government and private sector positions, including at the VA. From 2004 until 2015, she worked as a project manager and contract specialist in the VA's central office. She made her first accommodation request to the VA because of her MS in 2004 or 2005, seeking accommodations including ergonomic chairs, desks, keyboards, and mouses; headsets and dictation software; and a work-from-home schedule. In 2012, Roberts formally requested ad hoc telework. The VA's central office granted all her requested accommodations, and Roberts consistently received positive performance reviews for her work.

In December 2015, Roberts moved from the VA's central office to its National Acquisition Center (the "NAC"), where she remained working as a contract specialist until she retired in 2020. The NAC, located in Hines, Illinois, works with vendors to establish supply

---

[1] The Court derives the facts in this section from the parties' Joint Statement of Undisputed Facts, Roberts' Statement of Additional Facts, and the VA's responses thereto. The Court notes that the VA does not dispute many of the statements included in Roberts' Statement of Additional Facts and so the parties should have included them in the Joint Statement. Although Roberts therefore has run afoul of the Court's standing order on summary judgment practice, the Court nonetheless considers the statements and responses to the extent appropriately presented, supported, and relevant to resolution of the pending motion for summary judgment. The Court construes all facts in the light most favorable to Roberts, the non-movant.

lines for medical supplies and staff for the VA and other federal agencies that provide health care. In general, contract specialists serve as the main liaisons between federal agency managers and vendors. Roberts explained that although she worked with vendors, co-workers, and supervisors to create contracts for vendors, she did not work with other federal agencies. Roberts had almost the same responsibilities as a contract specialist for the NAC that she did at the VA's central office, but at the NAC she could complete most of her work over the phone, email, or zoom.

After Roberts started at the NAC, on January 27, 2016, she submitted a request to receive the same accommodations she received while working as a contract specialist in the VA's central office. Specifically, Roberts sought a gliding, flexible schedule while on probation,[2] which would allow her to start and end work later; permission to work from home; permission to use a heater; a dedicated laptop to use at home; a wireless headset; a lumbar supported chair; and a special keyboard and keyboard tray. She submitted a note from her doctor alongside her request, which explained that because of her symptoms and the side of effects of her MS medication, the NAC should permit her to work from home so that she could effectively put in eight hours of work during periods of her MS exacerbation. Roberts' request went through an accommodation coordinator at the VA and then to Bob Satterfield, Roberts' immediate supervisor. On February 22, 2016, Satterfield approved the request in full. Despite the approval, Roberts never received a laptop for home, an ergonomic chair, or an ergonomic keyboard tray, and Satterfield did not allow her to start work later than 8:30 a.m. The record does not make clear whether or when

---

[2] Bob Satterfield, Roberts' immediate supervisor, stated in his deposition that Roberts was not on probation and that he did not know who wrote probation into her reasonable accommodation determination or why they did so. Doc. 41-1 at 55. Roberts similarly states that she "was not a probationary employee." Doc. 50 ¶ 10.

3

Roberts had the ability to take advantage of ad hoc telework.[3] In October 2017, Roberts followed up with Satterfield regarding her request for a flexible work schedule and ad hoc telework. Specifically, Roberts explained that her MS medication caused her to experience headaches and vertigo in the morning that usually subsided within hours. Still, Satterfield did not allow Roberts to start work after 8:30 a.m., purportedly because "[t]he work of a contract specialist requires a high degree of co-worker interaction and responsiveness."[4] Doc. 41 ¶ 7.

Roberts received multiple performance reviews during her time at the NAC. Satterfield provided Roberts' review for the period covering October 1, 2016 through September 30, 2017 in or around November 2017. Doc. 41-1 at 140–44. He rated her performance for the year as "fully successful."[5] *Id.* at 144. In May 2017, Satterfield conducted a mid-year progress review

---

[3] In Roberts' declaration and Statement of Additional Facts, she claims that Satterfield refused to allow her to telework. *See* Doc. 41-1 at 25 (Roberts testifying that she "was told [by her supervisor] that [her] telework wasn't provided because [she] had to work a 90-day probationary period"); Doc. 41-2 at 26 (Lou Demian, a Local Area Reasonable Accommodation ("LRAC") and HR specialist, testifying that he recalled Roberts indicating that "she had an issue with ad hoc telework not being granted by her supervisor"); *id.* at 4 ¶ 28 ("Satterfield refused to provide my approved telework claiming I was probationary and therefore ineligible."). But in the parties' Joint Statement of Undisputed Facts, they indicate that when Roberts "requested to work from home, her manager always approved." Doc. 41 ¶ 17. Although the record does not conclusively establish the truth of this statement, *see* Doc. 41-1 at 19 (Roberts could not recall whether anyone at the NAC ever denied her requests to work from home), Roberts herself testified that Satterfield granted her ad hoc telework request, *see id.* at 16; *see also* Doc. 41 ¶ 54; Doc 50 ¶ 25 (Roberts stating that in 2018, Satterfield threatened to take away her ability to telework).

[4] In its opening brief, the VA contends that Satterfield offered a "rational explanation" for the VA's decision not to allow Roberts to begin work later: "contract specialists [had to] maintain common business hours because their work required a high level of interaction and responsiveness." Doc. 40 at 12–13. However, the paragraph that the VA cites from the parties' Joint Statement of Undisputed Facts says nothing about common business hours or a contract specialists' responsibilities. *See id.* (citing Doc. 41 ¶ 40 ("None took as much leave as Roberts.")). Even assuming the VA meant to cite to paragraph 7 of the Joint Statement, which states that contract specialists must interact with and respond to co-workers at a "high degree," this paragraph says nothing about the need to maintain common business hours. Doc. 41 ¶ 7 ("The work of a contract specialist requires a high degree of co-worker interaction and responsiveness.").

[5] Although the parties do not define the VA's fiscal year, the Court assumes that Roberts' review pertained to fiscal year 2017. *See* https://www.federaltimes.com/management/budget/2022/09/20/why-the-us-federal-fiscal-year-2023-starts-in-october/.

4

with Roberts and rated her performance "Fully Successful or better." *Id.* at 142. During her fiscal year 2018 mid-year review, Satterfield again rated Roberts as "fully successful." Doc. 41 ¶ 19. However, he conditioned this rating on Roberts improving her performance—specifically her procurement action lead time ("PALT"), which requires that contract specialists complete an action within a certain number of days after receiving a complete bid from a prospective vendor. The VA states that Roberts did not improve her performance. Roberts disputes this contention, asserting that she did in fact complete action items per PALT standards. Based on Roberts' purported failure to improve and citing complaints received from vendors, Satterfield ultimately downgraded Roberts' performance rating to "unacceptable" for the 2018 fiscal year

In December 2018, after giving Roberts her year-end review, Satterfield informed Roberts of the VA's performance review appeal procedures and noted that he wanted to revisit her reasonable accommodation telework agreement through discussions with LRAC Demian. Roberts reached out to Demian on December 12, 2018 to report her belief that VA management did not fully support her reasonable accommodation request and that she experienced discrimination because of her disability. Roberts also contacted the VA's Office of Resolution Management with complaints about Satterfield's failure to accommodate, as well as discrimination and retaliation she experienced at work.

Roberts made another accommodation request in December 2019, which the VA approved. That accommodation would allow her to work twenty hours per week instead of forty. The VA also approved Roberts' request for FMLA leave. The record suggests that Roberts received at least her 2019 requested accommodations until she retired a few months later.

In 2020, at fifty years old, Roberts medically retired from the VA. Roberts attributes her early retirement to the VA's failure to accommodate her disability, which made it difficult for

5

her to perform her duties without stress or discomfort. Roberts testified that she has not worked since then because she is physically unable to work.

## LEGAL STANDARD

Summary judgment obviates the need for a trial where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To determine whether a genuine dispute of material fact exists, the Court must pierce the pleadings and assess the proof as presented in depositions, documents, answers to interrogatories, admissions, stipulations, and affidavits or declarations that are part of the record. Fed. R. Civ. P. 56(c)(1); *A.V. Consultants, Inc. v. Barnes*, 978 F.2d 996, 999 (7th Cir. 1992). The party seeking summary judgment bears the initial burden of demonstrating that no genuine dispute of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Bunn v. Fed. Deposit Ins. Corp. for Valley Bank Ill.*, 908 F.3d 290, 295 (7th Cir. 2018). In response, the non-moving party cannot rest on mere pleadings alone but must use the evidentiary tools listed above to identify specific material facts that demonstrate a genuine dispute for trial. Fed. R. Civ. P. 56(c)(1); *Celotex*, 477 U.S. at 324; *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 627 (7th Cir. 2014). The Court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Wehrle v. Cincinnati Ins. Co.*, 719 F.3d 840, 842 (7th Cir. 2013). However, a bare contention by the non-moving party that an issue of fact exists does not create a factual dispute, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000), and the non-moving party is "only entitled to the benefit of inferences supported by admissible evidence, not those 'supported by only speculation or conjecture,'" *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017) (citation omitted).

ANALYSIS

I.   **Disability Discrimination, Interference, and Retaliation Claims**

In addition to Roberts' failure to accommodate claim under the Rehabilitation Act, Roberts alleges disability discrimination and interference in violation of the Rehabilitation Act and retaliation in violation of the Rehabilitation Act, ADEA, and Title VII.  Although the VA purports to move for summary judgment on "all claims," in its memorandum in support of its motion for summary judgment, the VA only substantively addresses Roberts' failure to accommodate claim and her age and race discrimination claims.  *See* Doc. 40 at 9.  The VA's attempt to cure this deficiency in its reply brief does not suffice to present a claim on summary judgment.  *See Militello v. Cent. States Se. & Sw. Areas Pension Fund*, 360 F.3d 681, 690 n.10 (7th Cir. 2004) (expressly disregarding new arguments raised in reply brief).  Notwithstanding its contentions to the contrary, the VA does not sufficiently develop any arguments in its opening brief relating to Roberts' disability discrimination, interference, or retaliation claims that would afford Roberts the opportunity to respond.  *See Hernandez v. Cook Cnty. Sheriff's Off.*, 634 F.3d 906, 913 (7th Cir.2011) ("The underlying concern [behind the waiver rule] is to ensure that the opposing party is not prejudiced by being denied sufficient notice to respond to an argument.").  The VA addresses Roberts' discrimination claims in its opening brief only with respect to her age and race, arguing that Roberts having more work than other employees does not constitute an adverse employment action and rejecting Roberts' comparators; it does not grapple with her other allegations—for example, that the VA discriminated against her based on her disability by forcing her to retire.  The Court takes no position on the strength of Roberts' claims, but because the VA does not sufficiently present arguments regarding Roberts' disability discrimination, interference, or retaliation claims and Roberts has voluntarily dismissed her age and race

7

discrimination claims, the Court only addresses Roberts' failure to accommodate claim. *See Econ. Folding Box Corp. v. Anchor Frozen Foods Corp.*, 515 F.3d 718, 721 (7th Cir. 2008) ("It is not the court's responsibility to research the law and construct the parties' arguments for them.").

## II. Failure to Accommodate Claim

Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). The Rehabilitation Act borrows its definition of disability from the ADA, and courts use ADA precedent to analyze Rehabilitation Act claims. *See Garg v. Potter*, 521 F.3d 731, 736 (7th Cir. 2008). A plaintiff may bring claims for discriminatory treatment and for failure to accommodate under the Rehabilitation Act. *See Scheidler v. Indiana*, 914 F.3d 535, 541 (7th Cir. 2019) (explaining that "[t]he law recognizes the existence of separate claims" under the ADA and the Rehabilitation Act and articulating the standards for a claim for disparate treatment based on disability and one for failure to accommodate). As discussed above, because the VA only substantively addresses Roberts' failure to accommodate claim, the Court does the same.

To prevail on her failure to accommodate claim, Roberts must establish that (1) she is a qualified individual with a disability, (2) the VA knew of her disability, and (3) the VA failed to reasonably accommodate her disability. *Brumfield v. City of Chicago*, 735 F.3d 619, 631 (7th Cir. 2013). The VA does not dispute the second element for purposes of summary judgment, and so the Court examines only the first and third elements.

### A. Qualified Individual

A person constitutes a qualified individual under the Rehabilitation Act where she "is otherwise qualified to perform the essential functions of her job, with or without reasonable accommodation." *Garg*, 521 F.3d at 736. Courts "presume that an employer's understanding of the essential functions of the job is correct, unless the plaintiff offers sufficient evidence to the contrary." *Gratzl v. Off. of Chief Judges of 12th, 18th, 19th, & 22nd Jud. Cirs.*, 601 F.3d 674, 679 (7th Cir. 2010).

Here, the VA argues that Roberts was not a qualified individual under the Rehabilitation Act because her frequent absences rendered her unable to perform the essential functions of her job. Although "an employer is generally permitted to treat regular attendance as an essential job requirement and need not accommodate erratic or unreliable attendance," *Basden v. Pro. Transp., Inc.*, 714 F.3d 1034, 1037 (7th Cir. 2013), the Seventh Circuit has refused to characterize attendance as "an essential function of every employment position," *Amadio v. Ford Motor Co.*, 238 F.3d 919, 927 (7th Cir. 2001) ("[T]the list of occupations in Seventh Circuit cases requiring attendance as an essential function has grown to include, in addition to clerical worker, the positions of teacher, account representative, production employee, . . . plaint equipment repairment [, and now the plaintiff's] position on the assembly line at Fords' assembly plant." (citations omitted)). Roberts states that she could complete most of her work as a contract specialist via email, zoom, and phone calls, which distinguishes her case from those involving occupations that require in-person attendance. *See, e.g.*, *Byrne v. Avon Prod., Inc.*, 328 F.3d 379, 380 (7th Cir. 2003) (sole stationary engineer working the night shift at Avon Products did not constitute a qualified individual when he slept and read for hours during his shifts). In any event, Roberts has demonstrated a question of fact regarding whether she could perform the

9

essential functions of her job even considering her absences. For example, Roberts' leave records indicate that in 2016, she took around 140 hours of sick leave, 43 hours of leave without pay, 85 hours of other leave, and 8 hours of care and bereavement leave. Doc. 41-1 at 121–23. Still, the VA does not dispute that Roberts received a "fully successful" rating for the 2016 fiscal year. Doc. 51 at 6. Moreover, Roberts contends that she would not have required so much leave if the VA had accommodated her requests for a flexible schedule. She points to her consistently positive performance reviews in her previous VA role at the central office, where she received an ergonomic chair and had flexible start time. Although Roberts may not be able to prove that these accommodations would have enabled her to perform her job at the NAC to her employer's standards, Roberts has sufficiently demonstrated a question of fact best left for a jury. *See Joll v. Valparaiso Cmty. Sch.*, 953 F.3d 923, 928 (7th Cir. 2020) ("[T]he court must try to focus on the most persuasive story possible on the non-movant's behalf when asking whether a verdict in her favor would be reasonable or could result only from irrational speculation.").[6]

### B. Failure to Accommodate

To prevail on her failure to accommodate claim, Roberts must also establish that the VA failed to reasonably accommodate her disability. *Brumfield*, 735 F.3d at 631. "The accommodation obligation . . . brings with it a requirement that both the employer and the employee engage in a flexible 'interactive process' and make a 'good faith effort' to determine what accommodations are necessary." *Johnson v. Brennan*, No. 17 C 8878, 2020 WL 1139253, at *6 (N.D. Ill. Mar. 9, 2020) (quoting *Yochim v. Carson*, 935 F.3d 586, 590 (7th Cir. 2019)). Although an employer must engage with its employee regarding her accommodation requests,

---

[6] The VA points to the fact that Roberts has medically retired and currently cannot work. However, Roberts' *current* inability to work has no bearing on her ability to work at the time the VA purportedly failed to accommodate Roberts' disabilities. *See Basden*, 714 F.3d at 1037 ("[Plaintiff's] ability to come to work, or to otherwise perform the essential functions of her job, is examined as of the time of the adverse employment decision at issue.").

"an employer is not required to provide the particular accommodation that an employee requests." *Jay v. Intermet Wagner Inc.*, 233 F.3d 1014, 1017 (7th Cir. 2000). "Whether [an employee's] requested accommodation is reasonable or not is a highly fact-specific inquiry and requires balancing the needs of the parties." *McAllister v. Innovation Ventures, LLC*, 983 F.3d 963, 967–68 (7th Cir. 2020) (citation omitted) (internal quotation marks omitted).

The VA argues that it did not need to allow Roberts a flexible work schedule or an ergonomic chair because its decision to allow Roberts to work from home whenever she desired reasonably accommodated her disabilities.[7] However, in this case, the VA granted Roberts' request for accommodations in full—including her request for an ergonomic chair and a flexible start time—which suggests that the VA understood her request to be reasonable. *See* Doc. 41-2 at 25 (Demian testifying that "[i]f [an] employee has been approved reasonable accommodations, then the agency must abide by those approved accommodations"). The VA merely failed to honor her request, even after Roberts continued to seek the accommodations. *See* Doc. 41-2 at 85 (Roberts' October 2017 letter to Satterfield asking for a flexible schedule and ad hoc telework); *cf. id.* at 103 (Roberts' December 2018 email to Demian complaining that her "reasonable accommodation has not been fully supported"); *see also Johnson*, 2020 WL 1139253, at *7 (denying summary judgment on the plaintiff's failure to accommodate claim where "[t]he evidence . . . permit[ted] an inference that Defendant completely ignored multiple requests for an accommodation"). This is not a case where "the parties engaged in a meaningful back-and-forth" with Roberts making a request and the VA explaining why it could not grant her request; instead, a jury could understand this as "a case where an employee's request for

---

[7] In response to Roberts' Statement of Additional Facts, the VA submits that Roberts testified that she prefers working from home. Even if the Court found this information relevant, which it does not, the Court cannot find support for the VA's contention in the pages it cites or anywhere else in Roberts' deposition transcript.

accommodations fell on deaf ears." *Yochim*, 935 F.3d at 591.  A jury may ultimately find reasonable the VA's decision to allow Roberts to work from home and not to begin her work day later or provide her with an ergonomic chair, but viewing the record in the light most favorable to Roberts, the Court cannot make that determination at this stage.

## CONCLUSION

For the foregoing reasons, the Court denies the VA's motion for summary judgment [39] on Roberts' failure to accommodate claim under the Rehabilitation Act (Count I).  The Court dismisses Roberts' age and race discrimination claims (Counts III and IV) based on her withdrawal of these claims in response to the VA's motion and denies the VA's motion with respect to these claims as moot.  The Court allows Roberts' disability discrimination (Count I), interference (Count II), and retaliation (Count V) claims to proceed.

Dated: May 31, 2023

                                                             SARA L. ELLIS
                                                             United States District Judge